## GOODE *v.* ESLOW.

1. MALICIOUS PROSECUTION—PROBABLE CAUSE—INSTRUCTIONS.

   The question of probable cause for instituting a prosecution being a mixed question of law and fact, it is proper in any given case for the trial judge to direct the attention of the jury to a statement of what information, claimed to have been in the possession of the complaining witness, would be sufficient to constitute probable cause if the information was derived from reliable sources and was acted upon in good faith belief of its truth.

2. SAME—SPECIFIC INSTRUCTIONS—NECESSITY OF REQUESTS.

   Where both parties filed requests which called upon the circuit judge to charge the jury in general terms as to the law of probable cause, the appellant has no cause to complain that more specific language was not employed.

3. SAME—PROBABLE CAUSE—MALICE—DEFENSE.

   The motive with which a prosecution is undertaken is immaterial if there was in fact probable cause.

4. SAME—INSTRUCTIONS—PERSON AIDING IN PROSECUTION.

   In an action against one aiding and assisting the complaining witness in a criminal prosecution, an instruction which leaves the jury to infer that defendant's immunity from action depends wholly upon the question whether he acted from improper motives in aiding and securing the arrest and conviction of plaintiff, notwithstanding the existence of probable cause, is improper.

5. SAME—EVIDENCE—PROSECUTION FOR ADULTERY — CHARACTER OF WIFE.

   In an action for malicious prosecution against a father for assisting his son in procuring plaintiff's arrest for adultery, testimony as to the character of the son's wife, jointly arrested, as a hard-working woman, is immaterial, and its introduction prejudicial, as affording an opportunity for an appeal by counsel to the sympathies of the jury.

6. SAME—INSTRUCTIONS—WANT OF PROBABLE CAUSE—KNOWLEDGE OF DEFENDANT.

   There being no testimony in the case that defendant knew any facts of extenuation which were not equally known to

his son, and it appearing that defendant had knowledge of all facts known to his son, instructions as to defendant's liability in case he advised the prosecution without knowledge of the facts, or with knowlege of facts of extenuation not known to the son, though correct in the abstract, are misleading and should not be given.

Error to Ionia; Davis, J. Submitted November 19, 1907. (Docket No. 59.) Decided January 31, 1908.

Case by William H. Goode against James C. Eslow for malicious prosecution. There was judgment for plaintiff, and defendant brings error. Reversed.

*Huggett & McPeek* and *Scully & Davis,* for appellant.

*A. A. & H. A. Ellis,* for appellee.

MONTGOMERY, J. This is an action for malicious prosecution. It is charged that the defendant, James C. Eslow, aided and supported his son, William C. Eslow, in instituting and maintaining a prosecution against the plaintiff on the charge of adultery with Clara A. Eslow, wife of said William C. Eslow. The evidence tends to show that defendant did furnish the money with which to carry on the prosecution, and aided in securing testimony, and advised instituting the prosecution, and there was testimony tending to show that this prosecution was carried on with a purpose of aiding and assisting William C. Eslow in the prosecution of a civil suit then pending in Eaton county, instituted by the wife of William C. Eslow for the purpose of procuring a divorce, the custody of the children, and certain property which was claimed by defendant. The case turned then upon whether there was a want of probable cause and malice in causing this prosecution.

Upon the question of probable cause, the evidence tended to show that William C. Eslow and his wife were en-

gaged in the business of keeping a bath house at Eaton Rapids, Michigan, where mineral baths were given to patients; that they had rooms to let which were used in connection with the bath house; that plaintiff was at one time stopping with the Eslows, receiving treatment; that while he was there it was known to Mrs. Eslow that her husband had become suspicious that there was undue familiarity at least between plaintiff and his wife; that after the plaintiff had left Eaton Rapids and gone to Saranac, Michigan, and about Thanksgiving Day of 1904, William C. Eslow and his wife and children went to Albion to spend the day at the home of the defendant. William C. Eslow returned home to Eaton Rapids the following morning, leaving his wife and children to remain at Albion over Sunday. Early on Friday morning Mrs. Eslow put in a call at the telephone office for plaintiff at Saranac. She was unable to get into communication with him that day, although repeated calls were made, and she was not able to reach him until Saturday afternoon after he had returned from the country where he had been at work. She then had a conversation with him over the telephone, and immediately left Albion, taking the car for Jackson, where she arrived in time to take the evening train on the Michigan Central Railroad for Grand Rapids, arriving at that city between 10 and 11 o'clock. On Monday following she returned to Albion, and in the afternoon went to her home in Eaton Rapids with her children. Her husband knew nothing of this visit to Grand Rapids until some time in January following.

Just prior to the 10th of December Mrs. Eslow wrote a letter to a friend, Mary Derby, of Eaton Rapids, at that time engaged in teaching at Ypsilanti, requesting that she reply with a letter of invitation to visit her at Ypsilanti on Sunday, the 11th, and inclosing $3 to be returned to her as money sent by Miss Derby to pay the expense. The reply came. Mrs. Eslow left home on Saturday, December 10th, ostensibly for Ypsilanti. On Sunday, December 11th, Mr. Eslow met Miss Derby on the streets of

Eaton Rapids and was informed that his wife was then in Ypsilanti. Not being satisfied with this statement, he called up Miss Derby's boarding place by telephone and learned that no woman bearing the description of his wife had been seen there. Mrs. Eslow returned on Monday, the 12th, and her husband met her at the depot. She gave him an account of her visit with Miss Derby and how they passed the time, etc. After dinner he sought a private interview and endeavored to have her explain her trip. This she refused to do. The defendant happened to be at the home of his son at the time. Learning the talk between his son and his wife, the defendant interposed and suggested that, if the son would go out of the room, perhaps she would explain to him. This she did by claiming that she had been to Ionia to see a lady friend, Mrs. Parmeter, but acknowledged the deception she had practiced upon her husband through Miss Derby. She claimed that she would be able to show that she had been at Ionia by sending to her friend there for her photograph. The photograph came, but the testimony tends to show that it came before it could have been received in reply to a letter written by Mrs. Eslow.

Mr. Eslow wrote a letter to Etta Parmeter, the person with whom his wife claimed to have stopped, on the 17th of January, asking whether his wife stayed one or two nights with her. The reply which he received was as follows:

"IONIA, January 19, 1905.

" *Friend Will:* I received your letter and am at a loss to understand why you should even ask such a question, as Clara certainly told you about her trip, I hope it isn't possible you would ever for a minute doubt her word. Will, Clara and I were playmates since we were three years of age and together almost like sisters and I never knew her to tell an untruth and would trust my life in her hands, and you certainly should have as much confidence in your own wife as I. Perhaps you think I speak very plain to you, but it looks to me as though something was wrong, although Clara did not say an unkind word

of you to me and I didn't dream of anything until you wrote me. I hope you will not take offense as I only talk to you as I would to her. I will trust your honor to show this to her, I wouldn't write a word I would not want her to see, as I think there should be no secrets between man and wife. I hope to be able to come out to see you all before summer. Tell Clara to write.

"Yours in haste,
"ETTA."

About this time a conference was had between defendant, his son and wife, and her brother-in-law, Henry Marion. Her brother-in-law had a private conversation with her, but reported to William C. Eslow that, although he thought nothing was wrong, he could get no explanation from Mrs. Eslow of her trip to Grand Rapids.

On the 7th of February the chancery case in the Eaton circuit, before referred to, was brought by Mrs. Eslow. Issue was joined in this chancery case, and William C. Eslow, under advice of counsel, undertook to investigate the conduct of his wife at Grand Rapids, and at Ionia at the time of her visit to that place. The bill charged William C. Eslow with cruelty. William C. Eslow visited the Dexter House at Ionia, and with the proprietor examined the register, finding that on December 10th the register showed that J. Butler and wife were assigned to room 29. Eslow showed a photograph of his wife and each of two waitresses identified her as the woman who had stopped at the hotel at that time and stated that she was with a tall, bald-headed man. These witnesses recognized plaintiff as the man who was with the woman at the hotel represented by the photograph of Mrs. Eslow. This recognition took place at the examination. The chambermaid also recognized the photograph and gave a description of the parties at the hotel, the woman's dress, etc. Harry Scott, who was day clerk at the Dexter House, recognized the photograph of the Mrs. Butler who stopped with a bald-headed man as her husband as that of Mrs. Eslow. On the examination this witness also identified the plaintiff and Mrs. William C. Eslow.

Floyd Nelson, the porter at the Dexter House, remembered the fact of carrying a suit case from the depot to the hotel and thought that the parties in court at the examination were the same as at the hotel. A letter, addressed to J. Butler, Wayland, Michigan, was returned by the postmaster with the information indorsed that no one of that name was known. While plaintiff was at the bath house at Eaton Rapids, the wife of a Mr. J. Butler was there taking treatment. The plaintiff was well acquainted with her, and her husband was at the bath house frequently.

William C. Eslow at first thought that his wife, on the occasion of her trip to Ionia, left Eaton Rapids at 1:50 p. m., but at the time of the examination it was discovered from the time-tables that if this were true she could not have reached Ionia by the train on which the Dexter House employés claimed that she arrived in the city. The defendant on the examination testified that he came to Eaton Rapids with his wife on the 10th of December, in the forenoon, and that Clara A. Eslow had gone before they arrived at her home and was not seen by him until she returned on Monday. On the trial of the present case Clara A. Eslow testified that she left Eaton Rapids in the afternoon, and one Jesse Towner was called to sustain her and did give testimony that he saw her in Jackson in the afternoon, and stated that he remembered this from the fact of having paid his taxes that day. In this he is contradicted by the tax collector. Mrs. Peterson, who was employed in the Anderson House, which had communication with the bath house of the Eslows, testifies that she saw her at about 11 o'clock at her home. On the other hand, the testimony of the defendant is supported by that of his wife and by Bradley Miller, an employé of the Eslows in the bath house, by M. J. Knapp, a photographer, and by William C. Eslow, as well as by the testimony of the Dexter House witnesses who identified Mrs. Eslow as the woman who arrived there on the 4 o'clock train. Certain other items of testimony are in dispute,

but the above is sufficient for the purpose of outlining the main features of the case, and has been given at such length for the reason that it is contended in this court that the circuit judge should have directed a verdict for the defendant.

We are not prepared to say, however, that there was no conflict in the testimony upon material questions in the case, and the particular question upon which the conflict arose will be indicated as we deal with the assignments of error numbered 23 and 24. These assignments relate to the charge of the court, and complain of the court having used general terms in defining probable cause, and complain of the fact that nowhere in the charge is there a statement of what facts would, if in the knowledge of the defendant or of William C. Eslow, amount to probable cause for making a charge of adultery.

It is settled in this State that the question of what constitutes probable cause is a mixed question of law and fact, and therefore it is proper in any given case for the circuit judge to direct the attention of the jury to a statement of what information, claimed to have been in the possession of the complaining witness, would be sufficient to constitute probable cause if the information was derived from reliable sources and was acted upon in a good-faith belief of its truth. *McClay* v. *Hicks*, 119 Mich. 65. So in this case it would have been a proper instruction to this jury if the court had said that if the defendant had received information from his son, upon whom he relied, that the two parties who from the 10th to the 12th of December occupied the same room at the Dexter House in Ionia had been identified by two waitresses, the chambermaid, the clerk, and another as the plaintiff in this case and Mrs. William C. Eslow, and also had knowledge of the telephone communication between plaintiff and Mrs. Eslow, and of her immediately thereafter leaving his home and going to Grand Rapids, and of the fact that she had refused to give any account of her trip there, and if in fact defendant believed the witnesses who identified these par-

ties, this, in the absence of information showing such testimony to be mistaken or unworthy of belief, was, as matter of law, sufficient to constitute probable cause. If this were not so, the wronged husband would in any case far better form a conspiracy with the despoiler of his home than to turn to his own father for assistance in the time of his affliction.

It is true the plaintiff claims that Mrs. Eslow did not leave Eaton Rapids early enough on the 10th day of December to reach Ionia at as early an hour as she is stated by the defendant's witnesses to have arrived at the Dexter House. Upon this question the testimony was conflicting, and the proper questions for the jury were whether in fact Mrs. Eslow left Eaton Rapids too late to reach Ionia at the time stated, and if so, whether the defendant at the time he lent his assistance to his son was cognizant of and had notice of this fact. If such fact did exist and defendant knew of it, it would of course be notice to him that the story told by the Ionia witnesses was untrue in fact. But, in the absence of such information to throw doubt upon all the statements of these witnesses at the hotel, we are prepared to say that probable cause was fully shown. Nor do we think that the letter of Mrs. Parmeter, even if the defendant had knowledge of it, was sufficient to overcome the force of the information which the defendant acquired from the employés of the Dexter House as to the facts. The letter is evasive and the contents no answer to the inquiry contained in the letter to which it is in reply, and certainly it does not in any way dispute the testimony of the hotel employés. But although the better practice would have been to have given the instructions in this form, the record shows that on the trial below the counsel for the defendant was as much responsible for the instruction being given in general terms as was counsel for plaintiff. Both parties filed requests which called upon the circuit judge to charge the jury in general terms as to the law of probable cause, and if he was not correct in this instruction it

would not lie with the appellant to complain that more specific language was not employed.

Complaint is made, however, of an instruction contained in the original charge which reads as follows:

"Now the son in this case if he was acting upon probable cause and without malice he had the right to make this complaint and institute this prosecution, and if he was acting upon probable cause and without malice it would end this case against James C. Eslow, unless you are satisfied by a preponderance of evidence that he acted corruptly and for an unjust purpose and upon unjust motives in order to secure the arrest and conviction of this man Goode in bringing about this prosecution, and that is to be determined upon whether he fairly stated the facts he knew to his son and whether he disclosed to the prosecuting attorney at such times as he had opportunity, and to his own counsel, all the facts that were within his possession upon this matter; whether he was acting fairly and in good faith and without malice. In order to secure a verdict the plaintiff in this case must satisfy you he was acting without probable cause and maliciously."

We think this instruction was calculated to mislead the jury. If the last section of the instruction be omitted it is very clear that the immunity of defendant from prosecution was made to depend wholly upon the question of whether he acted from improper motives in aiding and securing the arrest and conviction of plaintiff; and the manner in which that question was to be determined was submitted to the jury as though that were the conclusive question. It is well settled that the motive with which a prosecution is undertaken is wholly immaterial if there was in fact probable cause, and the circuit judge in other portions of his charge so instructed the jury. But it is unlikely that they would apply that instruction to the specific facts pointed out as evidentiary facts, which would remove the protection which would come to the defendant from probable cause appearing to William C. Eslow, and when the last clause is read it is uncertain whether the requirement that the plaintiff should show that he was acting without probable cause and maliciously refers back

to the son, William C. Eslow, and was intended to qualify the first part of the instruction, or was intended to qualify the latter portion just preceding the clause in question. We think it is quite possible that the jury were misled by this instruction.

We should have some hesitancy about reversing the case upon this ground were it not that we think error was committed in the admission of certain testimony. Mrs. Peterson, a witness for the plaintiff, was permitted to testify, against objection, as to the amount of hard work that Mrs. Eslow did while she and her husband were running the bath house. This was offered for the purpose of showing the class of woman Mrs. Eslow was, that she was a hard-working woman and took care of the bath tubs and all the work of running the house. We are unable to see how this testimony was competent. The fact that she may have been a hard-working woman did not bear upon the question of whether she was guilty of the act of adultery which had been charged against her and plaintiff in the proceedings in Ionia county. It was introducing collateral inquiry which it cannot be presumed that the defendant came prepared to meet, and, while it might afford opportunity for an appeal of counsel to the sympathies of the jury, it could not bear directly upon the question of her guilt or innocence.

One other matter is pointed out. At the request of the plaintiff, the circuit judge charged the jury as follows:

"10th. One who advises and secures a third person to institute a malicious prosecution may be held liable in damages therefor, and one who aids and abets the prosecutor in such action is liable equally with the latter for damages therefor, and in such case as well as in all tort actions the parties may be sued jointly or severally for the damages occasioned by reason of the malicious prosecution.

"11th. The fact that a person who, at the defendant's instigation, made complaint, had probable cause for believing it to be well founded, will not avail the defendant as a defense where he acted without probable cause and ma-

liciously; that is to say, even though you should find that William C. Eslow had probable cause, that will be no defense to James C. Eslow; I will add to that—if he acted without probable cause and corruptly to secure probable advantages to himself, in aiding and abetting, and if you find that these acts were malicious. I might perhaps illustrate it in this way: If I should have a horse stolen, and I should have certain circumstances that led me to believe honestly and fairly that a certain person took that horse, and should lay those facts before the prosecuting attorney, acting fairly, and there were certain facts and circumstances that would lead a man of reasonable mind to the conclusion, as ordinary men act, that such party was guilty of stealing the horse, acting without malice, I would have the right to set the law in motion and cause his arrest. If Mr. Ellis, as another party, was aiding and abetting me under these circumstances, he believing I had probable cause and sufficient cause, and I related all of these facts and circumstances to him, he acting honestly and in good faith in aiding me, in going security for costs or assisting me financially, it could not be said he was acting without probable cause and maliciously; but if he had some private end to gain, and without a knowledge of the facts he should urge and insist upon my making the prosecution, not believing that there was any cause for it, and it turned out there was probable cause, that would not save him; he might be guilty of acting without probable cause under these circumstances. But if there was probable cause, such as would have entitled me to institute that prosecution, and he was only acting in the interest of justice and fairness, he would not be held liable simply because the prosecution failed, where there was probable cause for me to institute the complaint. It is not necessary to prove that the defendant was the originator of the proceedings complained of. If he participated voluntarily in the malicious prosecution, and it was carried on with his countenance and approbation, he aiding and assisting, he will be liable."

These charges may be correct in the abstract, but as applied to the facts in this case we think were misleading. The evidence in the case shows without dispute that the defendant had knowledge of all the material facts known to William C. Eslow before the institution of the criminal proceedings, that he knew no facts of extenuation which

were not equally known to William C. Eslow. There is no room in the case for the application of the rule which may be accurate enough in case there is any testimony tending to show knowledge of facts on the part of one who aids in a prosecution which were not possessed by the prosecutor. We think this instruction was calculated to confuse the jury and lead their minds away from the real issue in the case.

The other questions presented are not likely to arise on another trial.

The judgment will be reversed, and a new trial ordered.

OSTRANDER, HOOKER, CARPENTER, and MCALVAY, JJ., concurred.